UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David Silber,
      Plaintiff,

      v.                                                                                      Civil Action No. 1:09-CV-73

Andrew Pallito, Robert Hofmann,
Robert Kupec, Raymond Flum,
David Bovat, Ellen McWard,
Anita Carbonell, Dominic Damato,
James Kamel, Mark Potanis,
      Defendants.

## REPORT AND RECOMMENDATION
(Docs. 3, 8 and 28)

*Pro se* plaintiff David Silber is a federal pre-trial detainee currently being held in a state correctional facility. Silber claims that upon his arrival in state custody, and at various points thereafter, he has been housed in more restrictive conditions than his state-detainee counterparts solely because he is facing federal charges. He claims that such confinement constitutes punishment and violates his due process rights.

Pending before the Court are Silber's two motions for preliminary injunctive relief. (Docs. 3 and 8.) On July 16, 2009, the Court appointed the Office of the Defender General, Prisoners' Rights Office to represent the plaintiff. Subsequently, the defendants submitted evidence indicating that their incarceration policy with respect to federal pre-trial detainees has changed, and that such detainees are now treated no differently than state detainees. Citing this change in policy, appointed counsel has moved to withdraw on the grounds that the plaintiff's claims for injunctive relief are moot, and that Prisoners'

Rights cannot pursue monetary damages. (Doc. 28.) In light of the change in policy, and for reasons set forth more fully below, I recommend that the motions for a preliminary injunction be DENIED and GRANT the motion to withdraw.

**Factual Background**

Silber begins his complaint by stating that "[t]he Southern State Correctional Facility (herein SSCF) in Springfield, Vermont holds federal pre-trial detainees in 'close-custody.' Close custody is restrictive housing, a 22 hour lock-down administrative segregation-type environment." (Doc. 6 at 7) (parentheses in original). "All federal detainees are treated in this way regardless of violence, behavior or alleged crime." *Id.* at 8. Silber claims that detainees are initially told that such confinement will only last for 30 days, but that in fact it can continue for much longer. *Id.* at 8. Although he does not state how long he himself spent in close custody, the complaint suggests that it was several months. *Id.* at 8-9.

Silber argues that placing a federal pre-trial detainee in close custody confinement regardless of the underlying charge or behavioral history is a form of punishment, and thus violates the detainee's due process rights. He also complains that this sort of treatment is specific to SSCF, and that federal pre-trial detainees in other Vermont institutions are "comingled [sic] with state inmates after a short close-custody period, if any at all." Concurrent with his complaint, Silber filed a "memorandum of law" setting forth the legal arguments in support of his due process claim. (Doc 3.) Finding that

2

"Silber appears to be seeking relief in the near term," the Court construed the memorandum as a motion for a preliminary injunction. (Doc. 20.)

In a separate claim, apparently unrelated to his due process allegations, Silber alleges that he was placed in a "dry cell" after Department of Corrections ("DOC") personnel suspected him of having contraband concealed inside his body. Dressed only in boxer shorts, he was allegedly held in the "freezing cold cell" for five days with no "shower nor soap, shampoo, towel, toilet paper, toothbrush, toothpaste or other basic human needs." *Id.* at 11. This treatment, he claims, constituted retaliation and deliberate indifference. *Id.*

Several weeks after filing his complaint, Silber filed a second motion for injunctive relief, this time because he had been placed in close custody after serving five days in disciplinary segregation. (Doc. 8.) State prisoners, he claims, would have been returned to general population after serving time in segregation. His motion contends that placing him in close custody violated not only his due process rights, but also his right to be free from double jeopardy since it effectively punished him twice for the same disciplinary violation.

On July 1, 2009, the defendants responded to Silber's pending motions for injunctive relief with an opposition memorandum and supporting affidavits from prison personnel. Those affidavits explained that the DOC was using a points system to determine a detainee's classification level. Factors affecting the points calculation

usually included "an individual's offense history, institutional behavior and any pending charges . . . ." (Doc. 21-2 at 2.) When federal detainees were delivered to the DOC, however, the DOC often knew "nothing about the detentioner's criminal history or pending charges." (Doc. 21-3 at 1.) Furthermore, stated Robert Kupec, Facilities Executive for the DOC, "[t]he Department's history and experience with federal detentioners has resulted in managing these individuals with a heightened attention to risk control." (Doc. 21-2 at 2.) Federal detainees were therefore "awarded fifteen points for their pending federal charges. This number of points causes federal pretrial detainees to be classified as close custody." *Id.* The classification was allegedly reviewed at "regular intervals" by the Close Custody Management Team, which could grant an override "[a]t any time." *Id.* at 2-3.

On July 16, 2009, the Court granted Silber's motion for appointment of counsel and appointed Prisoners' Right to represent him. On October 15, 2009, Prisoners' Rights moved to withdraw, asserting that the "Department of Corrections (DOC) has changed its custody point sheet so that federal detainees are no longer assessed extra points on the basis of their status as federal detainees. The only remaining issue in this case regards monetary damages, and [this] office does not provide representation in this area." (Doc. 28.) Upon receiving the motion to withdraw, the Court asked the defendants for a supplemental filing with regard to current DOC policy. (Doc. 29.)

The defendants submitted supplemental documentation on November 3, 2009.

Included in the documentation is another affidavit from Robert Kupec, in which he states that "the Department has discontinued its practice of assigning fifteen points to federal detainees . . . because of their pending federal charges." (Doc. 30-1 at 2.) Instead, a classification decision is now "administered to federal detainees in the same manner as it is administered to state detainees and sentenced inmates." *Id.* If a federal detainee is placed in close custody, "that classification would not be based in whole or part upon consideration of the detainee's status as a federal pre-trial detainee . . . . In short, federal pre-trial detainee status is no longer a factor considered by the Department when making custody classification determinations." *Id.* at 3.

As of June 10, 2009, Silber was being housed in general population. (Doc. 21-2 at 3.)

## Discussion

**I.     Preliminary Injunction Motions**

Pending before the Court are Silber's two preliminary injunction motions, both of which relate to the classification question. A motion for a preliminary injunction must show "irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). However, "'[a] suit for injunctive relief is moot when the offending conduct ceases and the court finds that there is no reasonable expectation that it will resume.'" *Kuklachev v.*

5

*Gelfman*, 629 F. Supp. 2d 236, 252 (E.D.N.Y. 2008) (quoting *American Exp. Travel Related Services Co., Inc. v. MasterCard Intern. Inc.*, 776 F. Supp. 787, 790 (S.D.N.Y. 1991)).

Silber makes two related claims of unlawful classification, both of which appear to arise out of the DOC's points-based system. He first alleges that upon arrival in DOC custody, he was wrongfully placed in close custody. This claim has been confirmed by DOC officials, whose affidavits explain that federal detainees were automatically assigned enough points to qualify them for close custody status. Silber has subsequently alleged that he was placed in close custody after serving time in disciplinary segregation, and that a state detainee in the same circumstances would have been released to general population.

The DOC's recent submissions indicate that under its new policy, Silber would not have been placed in close custody on either occasion. As Robert Kupec's recent affidavit attests, "federal pre-trial detainee status is no longer a factor" in custody classification determinations. Consequently, there is no ongoing due process issue for the Court to address. Furthermore, given the DOC's representations to the Court, the Court has "no reasonable expectation" that the prior classification process will be reinstated. *Id.* The Court should therefore find that Silber's due process claim is moot, and DENY his motions for preliminary injunctive relief.

## II. Motion To Withdraw

The motion to withdraw filed by Attorney Lipschutz of the Prisoners' Rights Office is GRANTED. Silber's complaint seeks "injunctive relief against use of close custody for plaintiff" as well as compensatory and punitive damages. Because the grounds for injunctive relief – classification based upon federal detainee status – have now been remedied, there does not appear to be any valid basis for granting an injunction. Prisoners' Rights is not authorized to pursue claims for money damages, and thus may not proceed as counsel for the plaintiff.

If Silber still believes that he requires the assistance of counsel, he may renew his motion for appointment of counsel and set forth the reasons why such counsel should be appointed.

## III. Defendants' Request For Dismissal

In their supplemental filing on November 3, 2009, the defendants state that in light of the changed DOC policy "this matter" should "be dismissed because it is moot." (Doc. 30 at 1.) It is not clear from the word "matter" whether the defendants are referring solely to the issues raised in the motions for preliminary injunctive relief, or to the entire case. If the defendants are referring to anything beyond the prayers for injunctive relief, they are not taking into account Silber's request for damages and his "dry cell" claim. Accordingly, to the extent that the defendants have submitted a motion to dismiss the entire case, the motion should be DENIED.

## Conclusion

For the reasons set forth above, I recommend that Silber's motions for a preliminary injunction (Docs. 3 and 8) be DENIED. Plaintiff's counsel's motion to withdraw (Doc. 28) is GRANTED. Finally, to the extent that the defendants have moved in Doc. 30 to have this case dismissed, the motion should be DENIED.

Dated at Burlington, in the District of Vermont, this 1st day of December, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).