```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

David J. Silber,                       :
                                       :
        Plaintiff,                     :
                                       :
    v.                                 :   File No. 1:09-cv-00073-jgm
                                       :
Andrew Pallito, Robert Hofmann,        :
Robert Kupec, Raymond Flum,            :
David Bovat, Ellen McWard,             :
Anita Carbonell, Dominic Damato,       :
James Kamel, Mark Potanis,             :
                                       :
        Defendants.                    :

                             ORDER
                           (Doc. 68)

    Before the Court is the Magistrate Judge's Report and Recommendation filed February 7, 2011 (Doc. 68) regarding State Defendants Motion for Summary Judgment.  (Doc. 48.)

I.   Background

    The Defendants moved for summary judgment on June 6, 2010. (Doc. 48.)  Plaintiff David Silber, a federal pre-trial detainee proceeding pro se, moved to amend the Complaint.  Magistrate Judge Conroy, to whom this matter is referred, granted the motion, and further granted Silber an extension of time in which to respond to the pending motion for summary judgment.  (Doc. 57.)  Judge Conroy directed Defendants to respond to the amended complaint within the time period set forth in the Federal Rules. Further, the Defendants were given a deadline for filing a renewed motion for summary judgment, if one was required, and

Silber was given until October 15, 2010 to respond to any motion for summary judgment.  (Id.)

Silber filed an Amended Complaint on August 2, 2010.  (Doc. 58.)  The Defendants answered on August 11, 2010.  (Doc. 59.)  On October 29, 2010, Silber moved for a continuance, explaining he had been without access to a law library until October 15, 2010.  (Doc. 61.)  Magistrate Judge Conroy construed the motion as a motion for extension of time in which to respond to the Defendants' pending motion for summary judgment (referring to Doc. 48, because Defendants had not filed a renewed motion) and ordered Silber to file his opposition on or before January 3, 2011.  (Doc. 62.)  On January 7, 2011, Silber filed a motion for another extension of time, reporting he had been transferred and separated from his legal papers.  (Doc. 64.)  Judge Conroy granted Silber an extension until January 27, 2011 and requested the Clerk's Office to send the Amended Complaint (Doc. 58) and Defendants' summary judgment filings (Doc. 48 and attachments) to Silber.  (Doc. 65.)  On Silber's motion, Silber's response deadline was further extended to February 1, 2011.  (Docs. 66, 67.)

Judge Conroy issued a Report and Recommendation ("R&R") on Feb. 7, 2011.  Silber's Opposition to Defendant's Motion for Summary Judgment, dated January 30, 2011, was received by the Court and docketed on February 8, 2011.  A pro se prisoner's

filings are deemed filed on the date the prisoner delivers them to prison authorities.  Houston v. Lack, 487 U.S. 266, 276 (1988).  The Court will presume Silber's Opposition was turned over to prison officials on the date the papers were signed[1], and it will be deemed timely.  Silber's Opposition papers will be treated as an objection to the R&R, and this Court will make a *de novo* determination of those portions of the R&R which Silber's papers address.  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).  A district judge may "accept, reject, or modify the recommended disposition."  Id.

II.   Discussion

After careful review of the R&R and the parties' submissions, this Court AFFIRMS, APPROVES and ADOPTS the R&R, except it MODIFIES the R&R, in light of Silber's most recent Opposition, to address Silber's arguments that his detention in close custody violated due process.  "Close custody" is a form of solitary confinement where detainees are confined in their cells twenty-two hours a day, among other restrictions.  Silber was kept in close custody for a total of eleven to twelve months[2]

---

[1] On March 28, 2011, Silber filed "Plaintiff's Objection to Judge's Order," notifying the Court his Opposition was mailed two days before February 1, 2011 and urging the Court to treat it as an objection to the R&R.  (Doc. 71.)  Apart from reiterating that Silber objects to the R&R, the document does not advance any arguments supplementing Silber's Opposition.

[2] None of the Defendants' various submissions disputes the total duration of Silber's confinement in "close custody,"

3

while he was a pre-trial detainee.  Although the Court agrees with the R&R that Defendants are entitled to qualified immunity on Silber's due process claims, the analysis underlying this holding will be modified, because Silber has raised genuine issues of material fact regarding whether DOC procedures surrounding "close custody" detention for federal detainees violated due process.

Silber's Opposition to the Motion for Summary Judgment argues that when he was first incarcerated as a pre-trial detainee, he was held in close custody without due process for 75 days before being given an override to general population.  He also claims he was subsequently returned to close custody for two other periods following "B-level" disciplinary violations, in violation of his constitutional rights, and alleges he was not allowed to return to the general population despite filing grievances.  (Doc. 58.)

Silber argues the Defendants' sole justification for initially confining federal pre-trial detainees in close custody is based on a twenty-year old incident in which federal inmates with unknown escape histories attempted to escape, and Defendants' argument that all federal pre-trial detainees posed a heightened risk of escape is a meritless justification for subjecting all newly incarcerated federal pre-trial detainees to

---

described in his Amended Complaint. (Doc. 58, pp. 3-4.)

between 30 to 65 days of close custody before release into the general population.

Silber also points out Section 707 of Title 28 of the Vermont Statutes Annotated provides federal detainees and federal convicts held in Vermont correctional facilities "shall be subject to the same rules and discipline to which other inmates are subjected." Confinement of Persons Convicted by United States Courts, 28 V.S.A. § 707(a). Furthermore, Silber argues, while the DOC has issued no written directives either defining or governing the implementation of its "close custody" confinement, in at least one passage Directive #410.06 refers to "close custody" status and a hearing process prior to classification: "Inmates pending a classification hearing for placement in close custody shall be placed on Administrative Segregation pending their hearing or awaiting transfer to a close custody housing unit." Restrictive Housing Status, Conditions of Confinement, Doc. #410.06, available at http://doc.vermont.gov/about/policies.

Protected liberty interests "may arise from two sources-- the Due Process Clause itself and the laws of the States." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). Magistrate Judge Neidermeier observed in an R&R adopted in Shine v. Hofmann that placement in close custody, based on nothing more than a prisoner's status as a federal detainee, "could be considered punitive," raising both substantive and procedural due

5

process concerns.  <u>Shine</u>, 2:06-cv-237, 2009 WL 2179969, at *6 and n.2 (July 22, 2009 D. Vt.).  That Defendants disclaim any punitive intent with respect to Silber's initial classification and subsequent periods in close custody is not dispositive. "Absent a showing of an expressed intent to punish," whether segregation in close custody is legitimate or punitive "generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned." <u>Bell v. Wolfish</u>, 441 U.S. 520, 538 (1979). Furthermore, as Judge Neidermeier's R&R recognizes in <u>Shine</u>, Directive 410.06 "suggests that an inmate is entitled to a hearing before being placed in close custody."  <u>Shine</u>, 2009 WL 2179969, at *4.

As a pre-trial detainee, Silber's liberty interest in being free from this restrictive form of detention arises from the Due Process clause.  "[P]retrial detainees need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process." <u>Benjamin v. Fraser</u>, 264 F.3d 175, 188-89 (2d Cir. 2001) (affirming that <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995), which required convicted prisoners to show restraints imposed significant hardships to state a deprivation, does not apply to

6

pre-trial detainees, and noting fellow circuits have held the same).

Defendants have produced no evidence on summary judgment, other than conclusory allegations, to substantiate their claim that all federal pre-trial detainees posed a greater security risk, either of escape, violence, or bad behavior, warranting the restrictive form of confinement called for by "close custody." Detention in close custody based on status as a federal pre-trial detainee alone, therefore, because it appears excessive and not rationally related to the purpose[3] assigned to it, is tantamount to punishment, irrespective of whether the Department's regulations create a liberty interest in being free from detention in close custody.

After the district court's decision in Shine, the DOC altered its policy of automatically placing federal pre-trial detainees in close custody upon arrival at a facility and now communicates with the U.S. Marshals Service to obtain information that will enable it to assess risks posed by federal detainees. (Doc. 30.)  While this change in policy mooted Silber's motion for a preliminary injunction, the Defendants' supplemental submissions on that motion made clear "federal detainees may

---

[3] The Second Circuit has noted "[p]enological interests are . . . arguably not an appropriate guide for the pretrial detention of accused persons." Benjamin v. Fraser, 264 F.3d 175, 187 n.10 (2d Cir. 2001).

still be classified as a 'close custody' inmate." (Doc. 30 at 1, see also Doc. 30-1 ¶ 11). Defendants also concede there are no formal written DOC guidelines or due process procedures defining or governing "close custody" classification (Doc. 21-1), as there are for administrative or disciplinary segregation, and apart from the DOC's discontinuation of the practice of automatically awarding federal detainees fifteen points based on federal detainee status, "in all other respects" the Department's unwritten custody "classification procedure remains unchanged." See Doc. 30-1 ¶ 14, and compare Vermont DOC Policies and Directives, Document #410.03, Placement on Administrative Segregation (outlining procedures for due process hearing) and Directive #410.01, Facility Rules and Inmate Discipline (outlining procedures for due process hearing and imposing time limits of 30 days' disciplinary segregation for Major A-level offenses and 15 days' segregation for Major B-level offenses). Defendants also aver a Close Custody Management Team ("CCMT") has "discretion to impose or remove an individual from close custody at any time," a discretion that appears unfettered by any written policy. (Doc. 21-1.) This Court is mindful that "[t]he touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974).

There remain, therefore, genuine issues of material fact regarding whether the procedures available to Silber for either his initial administrative detention in close custody, his subsequent lengthy close custody detentions following "B-level" disciplinary violations, and his placement in a "dry cell," were adequate under due process.  With respect to the close custody detentions, the DOC's submissions concede there are "no formal Departmental policies or procedures with respect to placing individuals on close custody status" (Doc. 21), and indicate only that Silber was assigned a caseworker who "communicated with him," supposedly orally, and "advocated for him during CCMT meetings," to obtain overrides from his various close custody classifications.  (Doc. 21-1.)  The record is silent regarding whether Silber, with respect to any of his periods in close custody, was informed in writing of charges or reasons for placing him in close custody, whether his views were presented to the reviewing body either in writing or orally, and it is silent regarding any process afforded Silber with respect to his placement in the dry cell.

In Benjamin v. Frasier, the Second Circuit, recognizing a "pre-trial detainee, unlike a convicted prisoner, has a liberty interest in not being placed in disciplinary segregation," affirmed the district court's holding that pre-trial detainees placed in punitive restraints "required reasonable after-the-fact

9

procedural protections" that would ensure "that such restrictions on liberty will be terminated reasonably soon if they have no justification." Benjamin, 264 F.3d 175, 188-89 (2d Cir. 2001). The Circuit affirmed the district court's determination that provision of due process "reasonably promptly" after placement on restraint status was "in accordance with the Supreme Court's decision in Wolff v. McDonnell," 418 U.S. 539 (1974). Benjamin, 264 F.3d at 189. While Wolff does not require full adversary proceedings for disciplinary deprivations of liberty, it requires "written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence." Benjamin, 264 F.3d at 190 (applying Wolff's limited protections for prisoners to pre-trial detainees); see also Mendoza v. Blodgett, 960 F.2d 1425, 1431 (9th Cir. 1992) (holding a "prisoner is entitled to notice of the reason for being placed on the [dry cell] watch, and an opportunity to respond in writing, within a reasonable time after the commencement of the watch," and finding an after-the-watch hearing was insufficient and violated convicted inmate's right to due process).

Here, there is no evidence review by a Close Custody Management Team provided Silber with either the "notice of the charges against him and an opportunity to present his views" required by due process for administrative confinement, or the

"written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence" required by due process for disciplinary confinement.  Benjamin, 264 F.3d at 190, citing Hewitt v. Helms, 459 U.S. 460, 476 (1983) (holding convicted inmate in administrative detention must receive "some notice of the charges," and an "opportunity to present his views" either by "a written statement" or the prison may "permit oral presentations" in an "informal non-adversary evidentiary review" procedure) and Wolff v McDonnell, 418 U.S. 539, 561-70 (1974).  The record, as it stands, indicates Silber was not afforded the due process normally given to convicted inmates.

The evidence Defendants have submitted regarding the process Silber received (Doc. 21-1) makes no mention of notice to Silber, does not indicate whether Silber was permitted to make oral or written statements for consideration by the Close Custody Management Team, and therefore there is a genuine issue of material fact regarding whether it satisfies either the Hewitt or the Wolff standards.  This Order may prompt the Vermont Department of Corrections to ensure that written policies and procedures governing "close custody" detention satisfy due process.

Even so, Defendants are entitled to qualified immunity.  As the court noted in Shine, neither the Second Circuit nor other

courts in this Circuit have articulated whether the placement of a federal pre-trial detainee in close custody violates due process.  Nor has any case articulated whether the procedures afforded federal pre-trial detainees for close custody detentions following disciplinary reports, if they differed from those afforded convicted inmates, violated due process.

At least for Silber's claims, which are based on events pre-dating the decision in Shine, a reasonable officer operating under the DOC's classification system for federal pre-trial detainees should not have been expected to know the system, or the pre- or post-deprivation procedures afforded federal detainees under it, might be constitutionally flawed.

For these reasons, Defendants are entitled to qualified immunity on Silber's due process claims.

Regarding Silber's other claims, the R&R is AFFIRMED, APPROVED and ADOPTED as follows:

1.   Silber's claims for damages against Defendants in their official capacities are barred by the Eleventh Amendment and are dismissed.

2.   To the extent Silber seeks relief beyond nominal damages, summary judgment in favor of Defendants is granted.

3.   Defendants' motion for summary judgment on Silber's claim that his placement in a "dry cell" violated his rights under the Fourteenth and Eighth Amendments is GRANTED.

    4.    Defendants' motion for summary judgment on Silber's retaliation claim is granted.

III. <u>Conclusion</u>

Defendants' Motion for Summary Judgment (Doc. 48) is GRANTED and this case is DISMISSED.

Dated at Brattleboro, in the District of Vermont, this 31st day of March, 2011.

                                          <u>/s/ J. Garvan Murtha</u>
                                          Honorable J. Garvan Murtha
                                          Senior United States District Judge